Curtis Frank **BROOKS**, Appellant,

v.

**The STATE of Texas**, Appellee.

No. 43794.

Court of Criminal Appeals of Texas.

May 19, 1971.

V. G. Kolius, Amarillo, for appellant.

George E. Dowlen, Dist. Atty., Richard P. Dambold, Asst. Dist. Atty., Canyon, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

This is an appeal from a conviction for rape; the jury assessed the punishment at 99 years.

The appellant's sole contention is that the evidence is insufficient to support a charge to the jury on "rape by force" or to support the jury's verdict of guilty. The indictment alleged "rape by force and threats" and the court charged on both.

The complaining witness testified that on January 19, 1970, early in the afternoon, the appellant came to the door at her home in Amarillo and asked for her husband. She and her five-year-old daughter were alone in the house. Her two sons, age eleven and nine, were at school. When she went to a desk to write down her husband's phone number, the appellant entered the house and said, "Turn around and don't make a sound." and pointed a gun at her. He then said, "Just shut up; if you will just do what I say, nobody is going to get hurt," and grabbing her five-year-old daughter, he said, "If you don't want this little girl killed, you will do just what I say." She told her daughter to get in the bathroom and lock the door, which the child did.

The appellant then grabbed her right arm and bent it up against her back, stuck the gun in her back, and asked, "Is anybody coming? Are you expecting anyone?"

She said, "No." He led her around to the various rooms in the house looking to see if anyone was there.

When they came to the master bedroom, he ordered her to lie face down on the bed, blindfolded her, and fondled her. He also took $160 which her father had given her out of her purse. He then ordered her to get up and not scream, threatening to harm the little girl. He also said, "If you don't do what I tell you to do, I will kill your boys."

When they entered the living room, he unzipped her shirt and pulled it over her shoulders and said, "Get your clothes off." He jammed the gun in her back and said, "Get them off fast if you don't want me to go get that little girl."

After she disrobed, he told her to first lie on the couch and then to lie on the floor

on her back. He then had sexual intercourse with her. She further testified as follows:

"Q All right. Now, for the record, B————, was this with or without your consent?

"A Without.

"Q Why did you submit to him, B————?

"A Because he had a gun, and I had a little girl, and he said he would kill her if I didn't."

Then, threatening to kill her children, he made her swear not to call the police. He took her back to the master bedroom and tied her feet and hands and asked if there was any more money in the house. When she said there was not, he said, "You are lying, and I am going to search the house, and if I find any more money, I am going to kill that little girl." She then told him where her husband's coin collection was, helped him open a locked box containing some $2 bills, and told him about a $5 bill in her daughter's room. The appellant said to her several times, "Don't you move if you don't want that little girl hurt." She then pushed the blindfold down by rubbing it against the bed and was able to free her hands and feet. After checking on her daughter's safety, she determined that the appellant had left the house and called for help.

Several of the items taken from the home were later found in the appellant's possession.

The appellant took the stand and testified that he went to the house with the intent to burglarize it. He admitted pulling a gun and telling her to do what he said, but he denied threatening the little girl. He also admitted taking the money and having sexual intercourse with the prosecutrix. He testified, however, that she did not resist, but cooperated fully and voluntarily. However, his confession was introduced into evidence and in it he admitted raping the prosecutrix.

Article 1184 of the Vernon's Ann. Penal Code provides that, "The definition of 'force' as applicable to assault and battery applies also to rape, and it must have been such as might reasonably be supposed sufficient to overcome resistance, taking into consideration the relative strength of the parties and other circumstances of the case."

"In determining the sufficiency of force used, the jury can take into consideration threats made by the accused at the time of the commission of the offense." Broadway v. State, Tex.Cr.App., 418 S.W.2d 679; Vanderpool v. State, 155 Tex.Cr.R. 318, 234 S.W.2d 879; Grady v. State, 112 Tex.Cr. R. 621, 18 S.W.2d 160.

"Where rape by both force and threats is alleged, it is proper to consider the cogency that the threats may have contributed to the force, and the intensifying influence that the force may have imprinted to the threats." 48 Tex.Jur.2d 637, Sec. 4.

█ In view of the evidence of display of the firearm, the evidence of threats to the children of the complaining witness, and the evidence of physical abuse of the complaining witness, it is clear that any resistance to the appellant would have endangered both the prosecutrix and her children. Considering these circumstances, as provided by Art. 1184, Penal Code, no resistance by the prosecutrix was required. See: Elliott v. State, 168 Tex.Cr.R. 140, 324 S.W.2d 218.

█ Considering those same circumstances, there is sufficient evidence to charge the jury on rape by force and for the jury to return a verdict of guilty.

Appellant's ground of error is overruled.

The judgment is affirmed.