6-96-028-CV Long Trusts v. Dowd 


















In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00024-CV
______________________________



IN RE:
KENNY RAY EVANS





                                                                                                                                                             

Original Mandamus Proceeding





                                                                                                                                                             
                          


Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPIN ION

            Relator, Kenny Ray Evans, seeks the issuance of a writ of mandamus compelling the district
clerk of Titus County, Texas, to issue citation in a case styled Evans v. Stacks, cause number 30713,
filed in Titus County, Texas, and have the defendant in that case served with plaintiff's original
petition.
            Evans asserts that, on October 21, 2003, he filed suit with the district clerk's office in Titus
County, Texas. Evans' lawsuit concerned a claim for personal injury. In the petition for writ of
mandamus now pending before this Court, Evans contends the district clerk has refused to issue
citation and have the defendant served with a copy of Evans' plaintiff's original petition. He asks this
Court to compel the district clerk to issue the citation in the underlying civil suit and have the listed
defendant served according to the Texas Rules of Civil Procedure.
            This Court has jurisdiction to issue a writ of mandamus against "a judge of a district or
county court in the court of appeals district." Tex. Gov't Code Ann. § 22.221(b) (Vernon Supp.
2004). The Legislature has not conferred authority on this Court to issue a writ of mandamus
generally, and we do not have the authority in the context of these allegations to issue a writ of
mandamus against a district clerk.
 
 
            We lack jurisdiction to grant the requested relief. Accordingly, we dismiss the original
proceeding for want of jurisdiction.
 

                                                                                     Josh R. Morriss, III
                                                                                    Chief Justice
 
Date Submitted:          February 17, 2004
Date Decided:             February 18, 2004



>Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a) (Vernon Supp. 2004) permits the
state and the defendant to offer evidence as to any matter the trial court deems relevant
to sentencing, including the defendant's general reputation, his or her character, and
opinions regarding her or his character. The trial court's decision to admit or exclude
evidence at the punishment phase is subject to review for an abuse of discretion. See
Mitchell v. State, 931 S.W.2d 950, 953 (Tex. Crim. App. 1996).
          As we stated in our original opinion, the requirement that the witness at the penalty
phase be substantially familiar with the defendant's reputation was removed by
amendment to Tex. R. Crim. Evid. 405(a) in 1990 and was not revived in Tex. R. Evid.
405(a).
          Still, because the basis for the reputation hearsay exception is the reliability of the
synthesis of observations of the day-to-day activities of the accused, Wagner v. State, 687
S.W.2d 303, 313 (Tex. Crim. App. [Panel Op.] 1984) (op. on reh'g), a reputation witness
must be familiar with the defendant's reputation in some community. While it is not
necessary to ask specifically about the defendant's "reputation," Adanandus v. State, 866
S.W.2d 210, 226 (Tex. Crim. App. 1993), the witness' testimony must be based on
discussions with others concerning the defendant, or on hearing others discuss the
defendant's reputation, not just on personal knowledge. Turner v. State, 805 S.W.2d 423,
429 (Tex. Crim. App. 1991).
          It has been held that discussions with other police officers are sufficient to qualify
a witness to testify regarding reputation. See id.; Martin v. State, 449 S.W.2d 257, 260
(Tex. Crim. App. 1970). However, the testimony may not be based solely on the charged
offense, the defendant's "rap sheet," or knowledge of specific acts. See Mitchell v. State, 
524 S.W.2d 510, 512 (Tex. Crim. App. 1975); Davis v. State, 831 S.W.2d 839, 844 (Tex.
App.‒Dallas 1992, pet. ref'd); see also Wagner, 687 S.W.2d at 313-14 (error to allow
reputation testimony based on allegation of one specific act); Frison v. State, 473 S.W.2d
479, 485 (Tex. Crim. App. 1971) (discussion of offense not improper as basis as long as
based on other discussions as well).
          Before the State began its case-in-chief at the penalty phase, defense counsel
objected outside the presence of the jury to the State's intention to call Schraeder as a
reputation witness. On voir dire, Schraeder testified she was familiar with Manning's
reputation in the community. On cross-examination, responding to Manning's question
requesting to know the basis of her reputation testimony, Schraeder testified only as to her
personal knowledge that Manning had appeared in court for his conditional bond hearing
smelling of alcohol and with a blood alcohol concentration of .07, and that she had
received reports from supervising personnel that, while he was on conditional bond,
Manning tested positive twice for cocaine use. At the conclusion of questioning on voir
dire, Manning objected to Schraeder as an opinion or reputation witness because there
was insufficient predicate laid. This objection was overruled. Schraeder testified before
the jury that Manning appeared at a bond hearing smelling of alcohol and, after the court
overruled Manning's renewed objection, that Manning's reputation for being peaceful and
law-abiding was bad.
          Manning contends the court abused its discretion in allowing Schraeder's reputation
testimony because the State failed to establish a proper predicate. Although Schraeder
testified she was familiar with Manning's poor reputation for being a peaceful and
law-abiding citizen, the cross-examination by Manning revealed this knowledge of
reputation was based only on Schraeder's one personal observation and two reports of
specific acts. Although the State argues Schraeder testified to discussions with the
supervising personnel that faxed the test results, the record indicates she received only
facsimiles reporting the results of the urine analysis tests. 
          The test results are evidence of specific acts, and while it is not error to consider
specific acts in determining the reputation of the accused, alone they cannot combine with
personal knowledge to establish Schraeder's competence to testify as to Manning's
reputation. There is no evidence Schraeder discussed Manning with anyone, official or
civilian, within any community. Such a foundation is insufficient to establish the proper
predicate. Manning's question was broad enough that Schraeder should have provided
all the bases for her familiarity with Manning's reputation. The State failed to ask any
questions on redirect examination that might have established the proper predicate if
Schraeder had failed to provide a complete answer. The court, therefore, abused its
discretion in allowing Schraeder to testify that Manning's reputation for being peaceable
and law-abiding was bad. 
          We now turn to a harm analysis. In our review of nonconstitutional error, we are to
disregard errors, defects, irregularities, or variances that do not affect substantial rights of
the accused. Tex. R. App. P. 44.2(b).


 A "substantial right" is affected when the error had
a substantial and injurious effect or influence in determining the jury's verdict. Tex. R. App.
P. 44.2(b); King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). If, on the record
as a whole, it appears the error "did not influence the jury, or had but a slight effect," we
must conclude the error was not harmful and allow the conviction to stand. Johnson v.
State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).
          In order to properly conduct a harm analysis under Tex. R. App. P. 44.2(b), we
conduct a harm analysis as a type of "other errors," and we must disregard the error unless
it "affect[ed] [appellant's] substantial rights." Tex. R. App. P. 44.2(b). For claims of
nonconstitutional error, the Texas Court of Criminal Appeals has held that "a conviction
should not be overturned unless, after examining the record as a whole, a court concludes
that an error may have had 'substantial influence' on the outcome of the proceeding." 
Burnett v. State, 88 S.W.3d 633, 637 (Tex. Crim. App. 2002). In other words, if we have
"a grave doubt" the result was free from the substantial influence of the error, then we must
reverse. Id. The court has explained that "grave doubt" means, "in the judge's mind, the
matter is so evenly balanced that he feels himself in virtual equipoise as to the
harmlessness of the error." Id. at 637-38, citing O'Neal v. McAninch, 513 U.S. 432, 435-36
(1995). Thus, "in cases of grave doubt as to harmlessness the petitioner must win." 
Burnett, 88 S.W.3d at 637.
          In considering harm, we must review the entire record to determine whether the
error had more than a slight influence on the verdict. See King, 953 S.W.2d at 271, citing
Kotteakos v. United States, 328 U.S. 750, 776 (1946); Reeves v. State, 969 S.W.2d 471,
491 (Tex. App.‒Waco 1998, pet. ref'd). If we find the error had more than a slight influence
on the verdict, we must conclude the error affected the defendant's substantial rights in
such a way as to require a new trial. Reeves, 969 S.W.2d at 491. As explained above,
if we have grave doubts about the error's effect on the outcome, we must remand. Id. 
Otherwise, we should disregard the error. Lopez v. State, 990 S.W.2d 770, 778 (Tex.
App.‒Austin 1999, no pet.); Reeves, 969 S.W.2d at 491.
          In the context of alleged error at the punishment phase, under Rule 44.2(b), we
therefore review the entire record to determine whether the error had more than a slight
influence on the penalty assessed. If we find that it did, we must conclude the error
affected the defendant's substantial rights in such a way as to require a new punishment
hearing. Otherwise, we disregard the error. Guerrero v. State, No. 10-00-217-CR, 2003
WL 21815380, at *4 (Tex. App.‒Waco July 23, 2003, no pet. h.); Flores v. State, 48
S.W.3d 397, 404-05 (Tex. App.‒Waco 2001, pet. ref'd). We conclude from such review
the error did not have more than a slight influence on the penalty the jury assessed in this
case. 
          First, Schraeder did not testify in front of the jury as to all the specific acts she
described on voir dire. Specifically, she told the jury Manning "had appeared in court with
a smell of alcohol on his breath." She did not testify to the jury about the .07 blood alcohol
concentration or about receiving reports he had tested positive for cocaine use. If
Schraeder's testimony in front of the jury as a reputation witness had included all the
specific acts she related on voir dire, the harm would have been more apparent. However,
had the State qualified Schraeder to give her opinion as to Manning's character, not just
his reputation, all these specific acts would have been admissible anyway as prior "bad
acts" under Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1).



          Second, after Schraeder testified for the State, Manning's counsel essentially turned
her into a witness for the defense. On cross-examination, defense counsel questioned
her–and she testified at length–about the terms and conditions of community supervision
and about the procedures involved in a revocation of community supervision. Although the
jury did not recommend community supervision in its verdict, this was testimony in support
of Manning's application for community supervision that he was able to get before the jury
through the State's own witness.
          Third, Schraeder was not the only witness the State called at the punishment
hearing. The jury also heard from Janice Peterson, daughter of Katherine Bonner, the
deceased victim, that her mother was a good person and is missed. The jury was also
able to consider the evidence introduced at the guilt/innocence stage of trial. 
          Fourth, the State's focus in its closing argument was not on Schraeder's testimony,
but on the evidence presented during the guilt/innocence phase showing that Manning had
a cocaine metabolite in his blood during the accident and on the fact that Manning
presented no witnesses on his behalf at the penalty phase. The State barely mentioned
Schraeder's reputation testimony, and only talked about Manning's appearance at court
with alcohol on his breath in response to defense counsel's argument about that matter. 
           Finally, although this case involved the tragic death of an innocent person, and the
State asked for the maximum punishment of twenty years' imprisonment, the jury assessed
only ten years' imprisonment. We recognize that Manning was eligible for community
supervision and that the jury rejected his request for that leniency. We cannot say,
however, that the erroneous admission of Schraeder's reputation testimony made the
difference in Manning not receiving community supervision. 
          In light of the entirety of this record and the testimony admitted before the jury, we
do not have the requisite "grave doubt" that the error made by the court in admitting
unsupported testimony that Manning had a bad reputation influenced the jury more than
slightly. The contention of error is overruled.
          We affirm the judgment.


                                                                Donald R. Ross
                                                                Justice 


Date Submitted:      October 28, 2003
Date Decided:         November 19, 2003

Publish